INHABITANTS OF RIPLEY *vs.* INHABITANTS OF HEBRON.

*Declaration—amendment of. Evidence. Pauper.*

In an action by one town against another, to recover the value of supplies furnished a pauper, a declaration alleging that the pauper fell into distress in the plaintiff town 'on Dec. 2, 1868,' and the plaintiffs furnished the pauper with supplies from that time to Nov. 24, 1869, 'to the amount in all of $469,' may be amended by substituting 1867 for '1868.'

Inhabitants of Ripley *v.* Inhabitants of Hebron.

Where, in a pauper case, upon the issue, whether the pauper had had his home five consecutive years, between March, 1860, and December, 1867, in the plaintiff town, the question turned mainly on the facts connected with an undisputed absence of three weeks, in March, 1863, in another town, where he went and resided with one K. and of another of a few days in September, 1863, it is competent for the plaintiffs to show, that the pauper came to the witness's house in the plaintiff town and wanted to stay a spell, but that the witness declined to allow him to stay but a short time, stating to the pauper the condition of the witness's family as the reason for thus declining ; and also to show that when the pauper came, he brought nothing except the clothes he had on.

*Held*, That such conversation tended to show the character of the residence and was not mere declarations.

*Held*, also, that it was competent for such witness to testify that while the pauper was thus stopping at his house in March, 1863, he heard K. propose to the pauper to go and live with him in D.,—that he would give him a home there as long as he wanted one; that the pauper replied he would think of it ; that two days afterwards K. came and renewed his proposition, when the pauper said he would go, and did go the next morning.

Also *held*, that it was competent for such witnesses to testify whether or not, at the time the pauper thus left the witness's house, there was any understanding between the witness and the pauper, or any authority given by the witness to the pauper, that the latter might return to the witness's house.

But *held*, also, that it was not competent to prove the declarations of K. (who was not a witness) as to his understanding of the nature of the pauper's residence with him.

When a pauper leaves a town where he has resided, having no family, leaving no house or place therein to which he has any right to return, and having no effects save the clothes he wears, the law does not presume that he intends a temporary absence, and has a continuing purpose to retain a home in such town, and return to it at some future period.

Nor does the law presume that he has no such intention.

But it leaves it to the jury to determine upon all the evidential circumstances and probabilities in the case, what his intention in fact was.

It is not necessary that there should be any distinct declaration of intention proved; but it may be latent in the mind of the pauper.

Where the original settlement of a pauper is admitted to have been in the defendant town, and in setting up a subsequent five years' continuous residence, between the years of 1860 and 1867, in another town, a personal absence of three weeks in March, 1863, appears, it is incumbent upon the defendants to satisfy the jury, from all the circumstances and probabilities in the case, that when he left he did not intend to abandon it as his home, but did intend to retain his connection with the town as his home during his absence, and to return to it, as such, after accomplishing the purpose of his absence.

Exceptions will not be sustained for declining to give certain requested instructions as matters of law, when in effect they would decide questions properly belonging to the jury.

ON EXCEPTIONS.

ASSUMPSIT to recover pauper supplies.

The declaration contained a special count only, as follows:

For that one John Washburn, a person having his legal settlement in the town of Hebron, fell into distress in said town of Ripley on Dec. 2, 1867, and then and there stood in need of immediate support and relief; and the plaintiffs, by their overseers of the poor, then and there, and from that time to Nov. 24, 1869, furnished and continued to furnish the said John Washburn with food, clothing, medical aid, and nursing and attendance, board, necessaries, labor and support, to the amount in all of four hundred and nineteen dollars; and the plaintiffs aver that at the time the said John Washburn so fell into distress and stood in need of immediate relief, and was relieved and supported as above stated, his legal settlement was in said town of Hebron; that within three months after said Washburn so fell into distress and was relieved by the plaintiffs, they, by their overseers of the poor, gave written notice to the overseers of the poor of said Hebron of the fact, that said Washburn had so fallen into distress in said town of Ripley and stood in need of immediate relief and support, and that the plaintiffs had furnished said relief and support; that said Washburn had a legal settlement in said town of Hebron, and that said overseers of the poor of said Hebron were requested to pay for the support already rendered, and remove him to their own town and relieve the plaintiffs from further expense and charge on his account.

And the plaintiffs further aver, that no answer was returned to their said notice within two months after the same was received by the overseers of the poor of the town of Hebron; by reason whereof the said town of Hebron is barred from contesting the settlement of said Washburn. And by reason of the premises the said town of Hebron have become liable to the plaintiffs, and, in consideration thereof, promised to pay them the sum expended as aforesaid on demand.

Writ dated Feb. 5, 1870. *Ad damnum,* $500.

The action came on for trial at the December term, 1871, when the plaintiffs obtained leave, against defendants' objections, to amend the declaration by substituting the year 1867, as the term when the pauper fell into distress, in place of 1868, as alleged.

To the ruling allowing the amendment, the defendants alleged exceptions.

The case was thereupon continued on motion of the defendants.

At the following March term the case came on for trial.

The only question submitted to the jury was that of settlement.

The defendants admitted that the pauper had his settlement in their town prior to 1830, but claimed that he had gained a settlement in the plaintiff town between March, 1860, and Dec. 2, 1867, when he fell into distress and was relieved by the plaintiffs, and introduced testimony tending to show that he did have an uninterrupted residence in Ripley during that time.

The plaintiffs claimed that the pauper's residence was interrupted during that period, and introduced evidence tending to prove, that in March, 1863, he abandoned Ripley and went to reside with one Kennedy, in Dexter, where he remained more than three weeks; that again in September, 1863, he abandoned Ripley and went to live with one Stafford, in St. Albans, where he continued a few days; that he had no home save where he worked, and no effects save the clothes he wore; and that he left nothing of his in Ripley during said absences.

The defendants denied that he abandoned his residence in Ripley; that the absences were temporary, that in each instance he returned to Ripley as soon as the purpose of his absence was accomplished, and that the continuity of his residence in Ripley was not thereby broken. One Seavey, called by the plaintiffs, testified substantially, that Washburn came to witness's house in Ripley, first of March, 1863, and wanted to stay a spell; that witness told him that witness's wife had no help; that wife's mother was sick and needed wife's care; that witness was then supporting a town pauper under contract; that witness refused to keep Washburn but a short time; and that Washburn had no bundle of any kind with him, and no clothes except what he had on.

That witness lived about eighty rods from one Kennedy who lived in Dexter; that when Washburn had been at witness's house five or six days, Kennedy came and proposed to Washburn to go and live with him, and that if he would go, he (K.) would give Washburn a home as long as he wanted one, whereupon Washburn replied that he would think of it a short time; that two days afterward, Kennedy came again and asked Washburn if he would go and live with him, repeating the former proposition and adding, that if Washburn would go, he should have a home at Kennedy's house as long as K. lived; and that Washburn replied he would go, and did go the next morning.

That when Washburn left witness's house, and went to Kennedy's, there was no understanding between witness and Washburn that the latter might return to witness's house.

That he heard a proposition made to Washburn, at witness's house, by Stafford, that he wanted some one to take care of his barn; that he, Stafford, could not give Washburn any rum, but that Stafford's wife could give him three drinks a day; that Washburn replied that he would go and stay through the winter, and went the next morning; and that witness did not see Washburn back in Ripley until the next spring.

Seavey's wife testified to the same as her husband substantially.

The testimony of Seavey and his wife was admitted against the seasonable objection of the defendants.

The defendants offered, by depositions and witnesses, to prove by the declarations of Kennedy while Washburn was at his house in March, 1863, the nature of Washburn's residence with him, but the presiding justice excluded the testimony.

Among other requested instructions which were given, the defendants asked the presiding justice to give the following:

1. That if the jury find Washburn had a residence established in Ripley, in order to break that residence, they must find that he departed from Ripley with intention to abandon.

2. That in our pauper laws 'intention' does not necessarily imply thought or mental action, but may be understood as implying

those circumstances and relations or state of feeling which have a tendency to lead a person to remain in, abandon, or return to a place of residence.

3. That if from the consideration of Washburn's circumstances, relations, and conditions,—his habits and associations, his object in going, and the duration of his stay, the jury should find it reasonable to expect he would return to Ripley, and should find that he did return accordingly, they should find that he so intended at the time of his departure, and that the continuity of his residence in Ripley was not broken.

4. That if they should find that Washburn left Ripley for a temporary purpose, and when that purpose, was accomplished he returned to Ripley, they should find he intended to so return when he left Ripley and the residence would not thereby be broken.

The court declined to give the instructions except as given in the charge, but did instruct the jury,

That if a man, in removing from his place of residence, takes all his goods with him, if a man of family takes his family and household goods, all connected with him; then, in order to retain his home where he left, it must be made apparent that he did not intend to change his home, but to retain it while absent, and to return to it when his temporary purpose was accomplished. That it is not necessary there should be a distinct declaration of such purpose, that the purpose or intention may be latent in the mind of the party, and that the jury should determine what the actual purpose and intention was from all the evidence.

The point to be established is, did he go away and remove for any length of time, and if so, did he intend to come back when he left and retain the intention during his absence? For a man to be resident, in the eye of the law, of a town where he is not, where his family is not, and where he has nothing left, the jury must be satisfied that when he went away and thus took up his residence, as it were, that he intended, when he went away, that it was his purpose not to abandon the town, but actually intended to return to it when this temporary purpose was accomplished.

Where a temporary absence is shown, where a man actually takes away all that he has with him, and stays a longer or shorter time in order to keep his residence in the town he left, it must be shown to your satisfaction that he intended to retain a residence in the town, and to go back to it as his home.

You have a right to consider what would be reasonable to expect from all the circumstances would be his intention, when that intention is not otherwise clearly proved.

The verdict was for the plaintiff.

To which admission and exclusion of testimony, instructions and refusals to instruct, the defendants alleged exceptions.

*A. Black*, for the defendants.

1. The amendment allowed the plaintiff to prove and recover for supplies furnished from Dec. 2, 1867, to Nov. 24, 1869, instead of from Dec. 2, 1868, extending the time an entire year, enlarging the claim originally declared on and thereby introducing a new cause of action, which was not allowable. *Robinson* v. *Miller*, 37 Maine, 312; *Wyman* v. *Kilgore*, 47 Maine, 184; *Slater* v. *Nason*, 15 Pick. 345; R. S., c. 82, § 9; 5th Rule of Court; *Parkman* v. *Nutting*, 59 Maine, 398. There is no bill of particulars, and *prima facie*, an enlargement of the time is an enlargement of the claim, since supplies were furnished between Dec. 2, 1867, and Dec. 2, 1868.

It is the practice to set out in gross a larger sum than is expected to be proved, and the gross sum affords no information of the real amount claimed. The only limit is the time.

The conversations between Kennedy and Washburn and Stafford and Washburn were not *res gestæ*. Washburn's declarations to Kennedy and Stafford were not admissible as facts any more than those with Seavey. Declarations as original evidence are admitted without regard to their truth or falsity, and are not to be used as testimony to prove or disprove the case. They are admitted with reference to their effect upon third persons in influencing their conduct, when it is at issue, or to show mental condition, be-

lief, etc., of the declarant, but not where the declarations themselves are to be used as proof in the case. The object of them was to prove Washburn's intention. If false the plaintiffs would no longer consider them worth proving. The intrinsic weakness of hearsay testimony, its incompetency to satisfy the mind as to the existence of a fact, and the frauds which may be practiced under its cover which have induced its exclusion except in certain instances, are equally applicable to their conversations. 1 Greenl. on Ev., § 99; *Smith* v. *Coffin*, 18 Maine, 157.

The declarations of Kennedy while Washburn was at his house, showed the nature and purpose of his stay. The declarations of Washburn, the other party to the conversations, were admissible when explanatory of his intention in staying at Kennedy's as *res gestœ.* 1 Greenl. on Ev., § 108; *Bangor* v. *Brown*, 47 Maine, 100.

Where an oral contract as that between Washburn and Kennedy is being executed, the declarations of either party to it are admissible as *res gestœ.* 1 Greenl. on Ev., § 108; *Baring* v. *Calais*, 11 Maine, 463.

2. The second request should have been given. 'Intention,' as generally used, is a synonym for mental action, design, purpose; while in a majority of cases under our pauper law, it means those attachments, associations, and feelings which would lead a pauper to form an active intent, if he should give the matter any thought. No person as he daily goes from his house to place of business forms a real intention to return to it. People hardly ever think about returning. Yet it cannot be said they had no intention in the premises. Juries may commit great errors unless they are at liberty to infer intention from all the circumstances.

The language in the third and fourth requests may be too strong, but the meaning is evident. Leaving for a temporary purpose, implies an intent to return.

A residence once established is presumed to continue till a change is proved. *N. Yarmouth* v. *W. Gardner*, 58 Maine, 207, made no change in the law in this respect. The burden of prov-

ing the want of intention to return remains upon the party alleging the abandonment, and the *onus* is not changed until a *prima facie* case of such want of intention is made out.

If the instruction that 'where a temporary absence is shown' and the pauper 'stays a longer or shorter time,' it must be shown to the satisfaction of the jury that he intended to return, or the residence is broken, is the law, it will be difficult to fix the settlement of persons without family and property. It gives the town alleging abandonment an advantage amounting to positive injustice.

The jury might well consider that 'purpose,' as used in the instructions meant mental activity.

*D. D. Stewart*, for the plaintiffs.

The amendment was allowable. *Brewer* v. *E. Machias*, 27 Maine, 494; *Cummings* v. *Buckfield B. R. R. Co.*, 35 Maine, 480; *Haynes* v. *Morgan*, 3 Mass. 210; *Perrin* v. *Keene*, 19 Maine, 335; *Barker* v. *Burgess*, 3 Met. 274; *Solon* v. *Perry*, 54 Maine, 493-496; *McVicker* v. *Budy*, 31 Maine, 314.

The amendment was unnecessary, the time being within the statute of limitations. 1 Chit. Pl. 257; *Purcell* v. *McNamara* 9 East, 162; *Coxon* v. *Lyon*, 2 Camp. 307, 308; *Phillips* v. *Shaw*, 4 B. & Ald. 435; *Miller* v. *Walker*, 2 Saund. 5 (note); *Pierce* v. *Pickens*, 16 Mass. 472; *Little* v. *Blunt*, 16 Pick. 365. The liability of the defendants was implied by law upon proof of certain distinct facts, one of which was the falling into distress of the pauper. Exactly when that was, was wholly immaterial if before suit brought and within statute of limitations. *Moore* v. *Boyd*, 24 Maine, 242.

KENT, J. There are two bills of exceptions in this case, presented and allowed at different terms. The first relates exclusively to the allowance of an amendment of the declaration. The suit is to recover a sum named for the support of a pauper. The allegation in the declaration was, that the pauper fell into distress on the second day of December, A. D. 1868. The plaintiffs moved

to amend by inserting the year 1867, as the time, when the pauper fell into distress. The judge overruled the objection made by the defendants and allowed the amendment, and granted a continuance at the motion of the defendants. The defendants except to the allowance of the amendment.

The exception can only be sustained by establishing the proposition, that it was such an amendment as could not be legally authorized by the presiding judge. Or, in other words, that it was beyond the power of the judge to grant it under any state of facts.

The first question is, whether this allegation of a particular day, on which the pauper fell into distress, is one that the plaintiffs are bound to prove, exactly as laid in the declaration.

The action is assumpsit, on an implied contract. It seems to be well settled, by a long series of decisions, that while an allegation of time is necessary in all declarations on a promise, it is not necessary to prove the day as alleged, except in case of the date of a written contract, named as bearing a particular date. In other cases, proof of the facts upon which the plaintiff rely, is admissible and sufficient if within the time of the statute of limitations.

In the case of *Little* v. *Blunt*, 16 Pick. 365. Mr. Justice Wilde, who was eminent as a pleader of the old school, says, ' The general rule is, that in all torts and parol contracts, the day when the tort is alleged to have been committed, or the contract made, is not material; and if the defendant makes it material by his plea, the plaintiff may reply another day, and it will be no departure, and the same principle applies to a case where it becomes necessary to prove when a contract was made, and it does not agree with the time alleged in the declaration.'

Chitty states the rule in similar terms, and concludes thus: ' In assumpsit upon a contract, the day upon which it is made being alleged only for form, the plaintiff is at liberty to prove that the contract, whether it be express or implied, was made at any other time.' He also says that ' the declaration must, in general, state a time when every material or traversable fact happened. The statement of the real or precise time, however, is not necessary

even in criminal cases, unless it constitutes a material part of the contract declared upon, or unless the date of a written contract or instrument is professed to be described. 1 Chitty on Pl., 257 ; *Coxon* v. *Lyon*, 2 Camp. 307 ; *Phillips* v. *Shaw*, 4 B. & Ald. 435, where it was held that where there is an allegation of a substantive matter, going to make up the necessary points of the case, and not a mere description of a record or paper, the allegation of time is immaterial, even when clearly erroneous. *Miller* v. *Walker*, 2 Saund. 5, (note).

In the case before us, the essential allegations to sustain the implied assumpsit, are these. That the person named fell into distress and was unable to provide for himself ; that the plaintiffs furnished supplies to him as a pauper, and the amount of the same ; that due notice was given to defendants ; and that the pauper at the time had his legal settlement in the defendant town. The material points are, pauperism—needed supplies furnished—notice— legal settlement. These being established, the law holds the defendants as on an implied promise to pay the amount reasonably incurred for such aid and relief. Time is not essential, provided it is within the statute of limitations applicable to such a case. The action is instituted to recover for supplies furnished a pauper. The time when he fell into distress is to be proved by parol, and therefore does not come within the exception of the date of a written instrument. The allegation is of a substantive matter, going to make up the necessary points of the case, and appears to be within the cases cited and the rule of the common law. If the time is not material within this law, the amendment could be allowed, although not absolutely necessary.

But it is farther objected that the amendment enlarged the claim, as stated originally in the writ, and, therefore, could not legally be allowed. The claim, as stated, is for four hundred and nineteen dollars, expended for the relief of this pauper. No account is annexed and no specifications of dates or items. The claim is not enlarged by the amendment. It still stands for four hundred and nineteen dollars only. Whether furnished one year or another,

all that can be recovered in this suit is the amount furnished within the time of the statute of limitations.

It is true that the declaration, as it was drawn, stated that the pauper fell into distress on the second day of December, 1868, and that the plaintiffs then and there, and from that date to Nov. 24, 1869, furnished and continued to furnish supplies. But if the time was immaterial and could be amended, the subsequent allegations must follow the amendment and conform to it.

It is not a case where an account is annexed to the writ, containing specific items, and dates and amount, and an attempt is made to enlarge the bill by the addition of new items, or of items of an earlier date. The claim here is for a sum named, and no request to enlarge it. We have seen that the claim is, in substance, for supplies to a pauper, within the time limited by statute. The exact day when they were first furnished, need not be proved as alleged. Of course the time when the subsequent supplies were furnished must follow the same rule.

The case of *Parkman* v. *Nutting*, 59 Maine, 398, was one where the account annexed was for items of cash beginning Jan. 15, 1864, and the specification in the writ was, that the plaintiffs claim to prove and recover the sum of sixteen thousand dollars, that amount of money delivered him on the 15th of January, A. D. 1864, and since, according to account annexed. The plaintiffs asked to amend by enlarging the claim, so as to enable them to recover amounts received since Jan. 1, 1863. The court held that this manifestly introduced a new cause of action, as it would enable the plaintiffs to recover, not only for all they had claimed in the writ, *i. e.* all monies received after January, 1864, but in addition thereto, monies not claimed or covered by the declarations and specifications. The amendment was, therefore, not allowed. The court decided that it was introducing a new cause of action, and, being such, it could not be allowed. But here no new cause of action is introduced and no enlargement of the real claim made, which is for a specified sum for pauper supplies.

*The first exceptions must be overruled.*

The case was tried at the next term, and another bill of exceptions was then allowed, and is now to be considered.

The first exception relates to the admission of certain testimony. The great question in the case was whether the pauper had had his home for five consecutive years in Ripley ; and the decision of this question turned mainly on the facts connected with the commencement of his residence, and on those relating to two undisputed absences, during the five years. Jonathan I. Seavy, called by plaintiffs, was allowed to testify against the objection of defendants, in substance, that the pauper came to his house in March, 1863, and wanted to stay a spell, but witness declined to allow him to stay but a short time, stating to him the condition of his family, as the reason for thus declining. He also stated that he brought nothing with him, except the clothes he had on.

This evidence was pertinent to the issue, and bore directly upon the question of the nature, extent, and character of the pauper's residence in Ripley. It was not hearsay, nor mere declarations, but evidence of facts, important and legitimate, going to prove the character of the residence.

The same witness, under a like objection, was allowed to testify as to a bargain which he heard made between the pauper and one Kennedy. The case finds that the pauper, in the same month of March, 1863, went from Ripley to Dexter to reside with Kennedy, where he remained about three weeks. It was claimed that this residence broke the continuity of the five years. It was, therefore, an important point to be determined, whether it was of such a character and with such intentions, and accompanied by such facts as showed that it did thus break in upon the five years of continued residence in Ripley.

The witness testified that he heard Kennedy, at the house of witness, and whilst pauper was staying there, make a proposition to the pauper to go and live with him, and if he would he would give him a home there as long as he wanted one. The pauper said he would think of it for a short time. Two days afterwards Kennedy came again and renewed the same proposition, and Washburn (the pauper), said he would go, and he did go the next morning.

This is but evidence of a contract made between two parties
—distinct and definite.   It is not hearsay, nor mere naked declar-
ation.   It is certainly unobjectionable to prove under what agree-
ment of hire or employment, or terms as to time or as to board, a
pauper  goes into a town, where the very question is as to the na-
ture of his residence there, and whether temporary or not.

For the same reasons, we see no objection to the question to the
witness, whether at the time the pauper left his house there was
any understanding between them, and any authority given from
witness to him that he might return to his house.   The answer
being in the negative, the evidence negatived the existence of a
fact, which, if left in doubt or to inference, might go far to sustain
the proposition that the pauper intended to return when he left.

There was a second absence at one Safford's in St. Albans, and
the witness testified to a similar kind of agreement between the
pauper and Safford, before going, as to terms, etc.   We see no dis-
tinction in the rule of law to be applied to the two cases.   They
both relate to an actual fact and bargain.   The testimony of Mrs.
Seavey simply confirms that of her husband, and comes within the
same principles.

The defendants, on their part, offered proof of certain declara-
tions of Kennedy, the man with whom the pauper lived in Dexter.
They were offered as ‘ tending to show the purpose and intent of
his being there.’   They were excluded.   They were mere naked
declarations of a third party, not offered to contradict him, for it
does not appear that he was a witness.   They were not evidence
of any distinct fact or bargain, but mere declarations of this third
party as to his understanding of the nature of the pauper's resi-
dence with him.

The pauper was not present.   Kennedy might have been a wit-
ness for either party.   His naked declarations could not be given,
unaccompanied by any act.

The exceptions as to the admission and exclusion of evidence
must be overruled.

The other portion of this bill of exceptions, relates to the ruling

of the judge at the trial on the question of residence. He instructed the jury that ' if a man, in removing from his place of residence,—takes all his goods with him,—if a man of family takes his family and household goods, all connected with him, then, in order to retain his home there while absent, it must be made apparent that he did not intend to change his home, but to retain it while absent, and to return to it when his temporary purpose was accomplished. That it is not necessary that there should be a distinct declaration of such purpose ; that the purpose or intention may be latent in the mind of the party, and that the jury should determine what the actual purpose and intention were from all the evidence. The point to be established is, did he go away and remain for any length of time, and if so, did he intend to come back when he left and retain that intention during his absence ; and this must be shown to the satisfaction of the jury.'

The same idea in substance was repeated several times, and the final instruction was, that ' where a temporary absence is shown, when the man actually takes away with him all that he has, and stays a longer or shorter time, in order to keep his residence in the town he left, it must be shown to your satisfaction that he intended to retain a residence in the town and to go back to it as his home.

In this case, the defendants having admitted that the pauper had originally a legal settlement in their town, that settlement remained until another was acquired. They undertook to establish this new settlement in the plaintiff town, by showing that the pauper had ' his home in that town for five successive years.' It was not denied that more than five years had elapsed, after his first coming into Ripley. The question was, whether he had had his home there uninterruptedly for that time. It was not controverted that at two different times within the five years he had been absent for some weeks in all, taking with him all his possessions, and having no family or any house of his own, nor any place to which he had a right to return as a home, and that he had no home save where he worked, and no effects save the clothes he wore.

The defendants having undertaken to overcome the effect of the admission of a prior legal settlement, they were bound to satisfy the jury that the pauper had his home in Ripley for an unbroken, continuous term of five years.   If broken for a month or a day, it was not within the statute requirement.

The rulings of the court become important as bearing on the point of the nature and effect of such absences, and were made as applicable to the facts developed.

When a man leaves a town where he has resided and goes away, and is no longer personally residing there, and leaves no family, nor property, nor place to which he has any claim, can he yet retain a home in the town he has left, and if he can, what is the criterion or test or fact that thus holds him to the place where ·he is not in fact dwelling?

After all the decisions on this vexed point, is not the solution to be found in the proposition, that, notwithstanding all these *indicia* usually conclusive of abandonment, the home may still remain, if it is made to appear that the person when he left, did not intend to abandon it as his home, but did intend to retain his connection with the town as his home, during his temporary absence, and to return to it, as such, after accomplishing his purpose.   It is the *animus revertendi* whilst it is operative and controlling, that keeps him a real, although unseen resident.   It is the chain that binds him still to the town, although as a wanderer—

'He drags at each remove a lengthening chain.'

But it must be a chain—one end of which remains fixed in the spot from which he started.   And if one link be broken by a distinct abandonment of the intention for a day,

'Tenth or ten thousandth breaks the chain alike.'

And this link may be broken at either end, at any moment within the five years; the intention to return may·be abandoned by mental action, and without any return to the place from which he removed.   *Hampden* v. *Levant*, 59 Maine, 557.

Inhabitants of Ripley *v.* Inhabitants of Hebron.

When a man has thus left a town, and has, to human view, no habitation there, and no visible hold on it, the law does not assume, or presume that he intends a temporary absence, and has a continuing purpose to retain it as his home, and to return to it as his home at some future period. Nor does the law assume that he has no such intention as a legal presumption.

But it leaves to the jury to determine, upon all the evidence and all the circumstances and all the probabilities, what his intention and purpose were in fact. The party setting up the five years' continuous residence, is bound to prove it. This is undoubted. If, whilst attempting to prove it a break in the actual residence is shown, it is for that party to establish such a state of facts as shows that the legal home remained there, notwithstanding the absence. In other words, the party is bound to make out his case, and if obstacles intervene, he is the one to remove them. The other party is not bound to prove a negative, or to show that an actual removal was no removal at all.

The rulings seem to be in accordance with the recent decision of this court in *North Yarmouth* v. *West Gardiner*, 58 Maine, 207, in which most of the cases are cited and commented on. It is unnecessary to discuss them anew.

The defendants requested certain instructions, which were not given in the language of the requests.

The first and last requests as to abandonment and intention have been sufficiently considered.

The second request asked for an instruction to the jury, ' that in our pauper law, intention does not necessarily imply mental action, but may be understood as implying those circumstances, and relations, or state of feelings, which have a tendency to lead a person to remain in, abandon, or return to a place of residence.' And ' that if, from the consideration of the pauper's circumstances relations, and conditions, his habits and associations, his object in going, and the duration of his stay, the jury should find it reasonable to expect he would return to Ripley, and should find that he did return accordingly, they should find that he so intended, at the time

of his departure, and that the continuity of his residence in Ripley was not broken.'

The judge did so far comply with these requests, as to say to the jury, that there need not be any distinct declaration of inten tion proved; that it may be latent in the mind, and that the jury should determine what the actual purpose and intention were from all the evidence; and that the jury had a right to consider what it would be reasonable to expect, from all the circumstances, would be his intention, when that intention is not otherwise clearly proved.

We think these instructions went as far in favor of the defend- ants as established principles would justify.

The court could not properly give the requested instructions as matter of law binding on the jury, and in effect deciding questions properly belonging to the jury.

> *All the exceptions in the case are overruled.*
>
> *Judgment on the verdict.*

APPLETON, C. J.; WALTON, DICKERSON, and DANFORTH, JJ., concurred.